John F. Gelson, Esq. (JFG 5658)
Richard J. Shaklee, Esq. (RJS 1858)
**McLAUGHLIN GELSON, LLC**
A Professional Corporation
Monmouth Shores Corporate Park
1305 Campus Parkway
Wall, NJ 07753
(732) 919-1155

**Neal Brickman, Esq. (NB 0874)**
**THE LAW OFFICES OF NEAL BRICKMAN, P.C.**
317 Madison Avenue, 21st Floor
New York, New York 10029
(212) 986-6840

*Attorneys for Plaintiff Vincent Sgro*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| VINCENT SGRO, | : | |
| | : | CASE NO: 05-00731 (FLW) (TJB) |
| Plaintiff, | : | |
| v. | : | **AMENDED** |
| BLOOMBERG, L.P, | : | **COMPLAINT & JURY DEMAND** |
| Defendant. | : | |

Plaintiff, Vincent Sgro, residing at 618 Reed Road, Jackson, New Jersey 08527 or P.O. Box 1328, Jackson, New Jersey 08527, by way of Complaint, against Defendant Bloomberg, L.P. with a principal place of business at 449 Park Avenue, New York, New York 10022 and a principal business address in New Jersey of 100 Business Park Drive, Princeton, New Jersey 08542, says as follows:

### I. Preliminary Statement

1. This is an action brought pursuant to the New Jersey Law Against Discrimination (hereinafter "*NJLAD*") for declaratory, injunctive and monetary damage relief, including compensatory damages, punitive damages, as well as for costs and attorney's fees.

### II. Venue

2. Plaintiff, Vincent Sgro, is a resident of 618 Reed Road, Township of Jackson, County of Ocean, New Jersey.

3. The operative facts set forth herein took place in Defendant's facilities at 400 College Road East, Township of South Brunswick, County of Middlesex, New Jersey and in the Township of Montgomery, County of Somerset, New Jersey.

### III. Jurisdiction

4. As set forth above, Plaintiff is a resident and domiciliary of the State of New Jersey.

5. Defendant Bloomberg, L.P. is a corporation incorporated under the laws of the State of Delaware and has its principal place of business and headquarters in the State of New York.

6. The amount in controversy between Plaintiff and Defendant exceeds $75,000.00.

7. Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. Section 1332.

## IV. Factual Background

### A. Plaintiff Vincent Sgro

8. Plaintiff Vincent Sgro is approximately 68 years of age.

9. Plaintiff Sgro was employed by Bloomberg L.P. for approximately 14 years all of which he served in New Jersey facilities of Defendant.

10. Plaintiff Sgro became an employee of Defendant after selling, in or around 1991, an energy commodities periodical, the *Oil Buyer's Guide*, that he owned to Bloomberg L.P. and specifically to Bloomberg L.P.'s founder, Michael Bloomberg. By agreement, Sgro worked for Bloomberg three (3) days a week. Once at Bloomberg, Sgro developed a niche, by writing articles about art, culture and collectibles, which were well-received and popular, and which ultimately led to the creation of the Lifestyles Department.

11. In or around 1996, Plaintiff Sgro was assigned to the Lifestyles Department were he worked writing articles about art, culture and collectibles.

12. In or around the late summer of 2001, in response to an article authored by another member of the Lifestyles Department, which later had to be corrected, the Lifestyles Department was dissolved by Defendant. At this time, although not the author of the article, Plaintiff and the others in the Lifestyles Department were reprimanded.

13. From 1996, through the abolition of the Lifestyles Department, the Department was staffed with five (5) individuals, all of whom were over the age of 40.

14. Four of the individuals were over the age of 50. The members of the Lifestyles Department were treated differently than similarly situated younger journalists employed by Bloomberg.

15. After the closing of the Lifestyles Department in early September 2001, Plaintiff Sgro and the other employees of the former Department were inexplicably left with no work assignments.

16. Out of the thousands of employees at the Bloomberg Princeton facility and in the New York office only a small percentage were over the age of 50.

17. On September 11, 2001, certain events transpired regarding Al Bassano, a former member of the Lifestyles Department, when he alerted the news editor James McCorry of the tragic event of the plane impacting tower number one of the World Trade Center.

18. Plaintiff Sgro, among others, lodged complaints on how Al Bassano's warnings were ignored.

19. Plaintiff Sgro, among others, included complaints on how Al Bassano's warnings on that day had been ignored as part of a written submission in his periodic employee evaluations.

20. Subsequently, Plaintiff Sgro was assigned to a Department which consisted largely of data entry that initial level employees could and did perform.

21. Subsequently, Plaintiff, as well as the other former members of the Lifestyles Department, was shuffled around Bloomberg in terms of their desks, work space and location, without advance warning or explanation. Plaintiff, as well as the other former members of the Lifestyles Department, was marginalized and/or ostracized.

22. Plaintiff's assignments included entering the Zagat ratings on the Bloomberg website, adding the "1" before area codes, compiling lists of area codes, and posting job advertisements for positions.

23. Additionally, Plaintiff Sgro was informed that he could no longer bring his grandchildren to the annual company picnic, which he had always done before.

24. Sgro and other former members of the Lifestyles Department, such as Al Bassano, complained orally and/or in writing to Bloomberg as to their treatment, and in sum or substance complained that the treatment was due to an age bias and/or age discrimination.

25. The only non-menial, non-entry level type work left to Plaintiff at this time was the arranging of seminars for Bloomberg employees on subjects of his expertise, collectibles.

26. In fact, this was the subject on which he had regularly written for the Lifestyles Department.

27. In or around the summer of 2004, Sgro was informed that the seminar functions would be taken away from him, despite the success of his seminars.

28. Sgro was advised by Beth Mazeo, head of the Data Center, that he would be given a new assignment, commensurate "with his skills and experience".

29. By this time, Vincent Sgro had over forty (40) years of business experience, had owned and edited his own periodical which had been bought by Defendant, and had worked for Defendant for approximately fourteen (14) years.

30. Despite this, Plaintiff was assigned to the PROS Department, a Department which was staffed almost entirely by individuals in their twenties, performing exclusively initial level data entry work.

31. Plaintiff's new supervisor, in this position which would supposedly use his decades of experience and skill, was a 25 year old.

32. Plaintiff was humiliated by being placed in this low level, menial position in comparison to his years of experience and knowledge. By way of example only, co-workers

approached Sgro to ask him questions such as, "why aren't you writing," and "why are they doing this to you?"

33. As a result of this debasing treatment, Plaintiff Sgro suffered great emotional distress.

34. As a result of this debasing treatment, Plaintiff Sgro sought relief and counseling through psychiatric treatment.

35. In or around the summer of 2004 Plaintiff, complained orally and/or in writing in response to his placement in PROS, a position which was not commensurate with his skills or expertise and, in sum or substance, complained that the treatment was due to an age bias and/or age discrimination. Prior to his placement in PROS, Plaintiff met with Beth Mazzeo at which time he complained about Bloomberg's misconduct and adverse actions taken against him as to the terms and conditions of his employment. Plaintiff was assured that the new position in PROS would be commensurate with his skills and expertise. Upon information and belief, Plaintiff was punitively assigned to the PROS Department in response to his previous oral and/or written complaints and in an effort to force his resignation from Bloomberg.

36. Other members of the former Lifestyles Department who were placed in the PROS Department also lodged complaints, in sum or substance asserting that the treatment was due to an age bias and/or age discrimination, prior to and after being placed in PROS. In or around the summer of 2004, Al Bassano, a former member of the Lifestyles Department, complained orally and/or in writing on his behalf and on behalf of the other former members of the Lifestyles Department including Sgro.

37. Plaintiff Sgro was compelled to seek a medical leave of absence as a direct result from the stress and physical toll he suffered.

6

38. As part of the new assignment to PROS, Bloomberg attempted to increase Plaintiff's normal part-time hours to five (5) days a week. Plaintiff complained orally and/or in writing in response to the increased in hours.

39. Since the time that Sgro had commenced employment with Bloomberg in 1991, upon agreement with the company founder, Michael Bloomberg, Sgro had worked on a part-time basis working less than five (5) days a week.

40. As part of the shift to the PROS Department, Plaintiff was told to work full-time, i.e. five (5) days per week.

41. Plaintiff was offered no extra pay for same and in fact was told specifically there would be no extra pay for the extra hours.

42. At this time, Defendant Bloomberg still published stories on the same subject matter, collectibles, on which Plaintiff wrote.

43. These articles may be found on the Bloomberg web site.

44. Accordingly, upon information and belief, other younger individuals have fulfilled the duties previously performed by Plaintiff after Plaintiff was told by the new Department that those services were not needed by the closing of the Lifestyles Department.

45. The harassing treatment aforesaid of Plaintiff was motivated by his age.

46. Defendant discriminated against Plaintiff in terms and conditions of his employment based impermissibly upon his age.

47. As a result of the foregoing, Defendant violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq. with knowing and reckless disregard of the statute's proscriptions.

48. As a direct and proximate result of Defendant's conduct in discriminating as aforesaid, Plaintiff has suffered loss of employment, monetary damages, great emotional pain, suffering and humiliation and mental distress and anguish, including physical manifestations of same.

49. Defendant's management officials actively participated in and/or were willfully indifferent to the aforesaid discrimination.

50. Defendant's management officials permitted and/or were negligent in preventing the hostile work environment aforesaid.

## V.    First Count
### (Retaliation Violation of New Jersey Law Against Discrimination)

51. Plaintiff repeats and reiterates all allegations in all foregoing paragraphs of this Complaint as if set forth here in full and incorporates same herein.

52. Bloomberg treated Plaintiff differently than similarly situated younger employees in like circumstances and/or treated Plaintiff less favorably because of his advanced age. Plaintiff lodged complaints, in sum or substance, of age discrimination with management verbally, in writing and/or in annual reviews.

53. As a result of these complaints, Defendant retaliated and took reprisals against Plaintiff including successively demoting Plaintiff in his positions, job duties and assignments in addition to other punitive actions, such as relocating Plaintiff's work space without notice or reason, attempting to increase his work schedule, and restricting him from participating in Bloomberg's seminars.

54. Specifically,

    a. After complaining in sum or substance about age discrimination and disparate treatment in 2001, Plaintiff was prevented from publishing any original content for Bloomberg, limited to no more than six lines of re-published content, and left for a substantial period of time without any job assignment or job duties. Thereafter, Plaintiff was placed in a position that consisted largely of data entry. Plaintiff was assigned the disheartening task of compiling lists of the victims of September 9, 2001 for entire days, day-after-day, as his exclusive job assignment, cynically dubbed by Bloomberg as the "death list."

    b. Nonetheless, Sgro attempted to use his skills and interests after being reassigned and started to participate in Bloomberg's seminars by creating and conducting seminars in the area of art, culture and collectibles. After attempting to be repositioned within Bloomberg in a job suited to his skills and expertise, and complaining in sum or substance that he was being treated less favorably because of his age, Sgro was told that he could no longer participate in the Bloomberg seminars, notwithstanding the fact that Sgro's seminars were well attended, well received and successful.

    c. Thereafter, Sgro complained about being excluded from the seminars, stating in sum or substance that he was being treated less favorably because of his age which was why he could no participate in the seminars, why he was exclusively given mundane data entry work assignments, and why he was unable to reposition himself within Bloomberg. In mid-2004, Sgro was told that he would be reassigned to the PROS Department under the guise that the position in PROS would match his skills and expertise.

    d. After being reassigned to PROS, in or around July 2004 and thereafter, Sgro complained again of age discrimination. Although represented as a position utilizing

9

Sgro's experience and skills, the position in PROS consisted entirely of data entry. Once assigned to the PROS Department, Sgro sought medical leave due to the emotional strain and physical toll suffered by him as a result of the punitive assignments designed to make him quit that were limited to the entry of repetitive and mundane data such as adding only the number "1" to area codes in lists of telephone numbers.

  e. Upon his return from medical leave, Sgro complained again about age discrimination and his position in PROS. Bloomberg demanded that Sgro work five (5) days a week despite the fact that he had worked part-time since joining Bloomberg in 1991 and despite the fact that the PROS Department was part of the Global Data Department where Sgro had worked for the last three or more years.

55. On or about February 7, 2005, Plaintiff filed this lawsuit against Bloomberg, L.P. titled, *Vincent Sgro, Al Bassano, Vera Stek and Ann Walker v. Bloomberg, L.P.* 3:05-cv-00731 (FLW) (TJB) (D.N.J. 2005), alleging *inter alia* age discrimination, intentional infliction of emotional distress, hostile work environment, and retaliation.

56. After filing the instant action, in or around March of 2005, Sgro was terminated from Bloomberg, L.P. Upon information and belief, Sgro was terminated in direct response to his lawsuit against Bloomberg which asserted *inter alia* age discrimination.

57. Defendant's actions constitute a violation of the *NJLAD*, specifically N.J.S.A. 10:5-12 (b).

58. Defendant did commit an unlawful employment practice pursuant to the *NJLAD* in altering terms and conditions in employment, and treating Plaintiff in a hostile or altered manner in reprisal for complaints legally protected.

59. As a direct and proximate result of Defendant's conduct in discriminating as aforesaid, Plaintiff was caused to suffer loss of employment, monetary damages, great emotional pain, suffering and humiliations and mental distress and anguish, including physical manifestations of same.

**WHEREFORE,** Plaintiffs, pray that this Court:

a. declare Defendant's conduct to be in violation of his rights under the New Jersey Law Against Discrimination;

b. enjoin Defendant from engaging in such conduct;

c. order back pay, front pay and benefits;

d. award punitive damages;

e. award costs and attorneys fees; and

f. award all other relief the Court deems just and equitable.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands trial by jury on all issues of this Complaint.

Dated: New York, New York
       October 5, 2009

**THE LAW OFFICES OF NEAL BRICKMAN, P.C.**
*Attorneys for Plaintiff*

By: /s/
_____
Neal Brickman (NB 0784)
317 Madison Avenue, 21st Floor
New York, New York 10017
T: (212) 986-5840
F: (212) 986-7691
E: neal@brickmanlaw.com

RICHARD J. SHAKLEE
McLaughlin Gelson LLC
*Local counsel for Plaintiff*
Monmouth Shores Corporate Park
1305 Campus Parkway
Wall, NJ 07753